UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:21-CR-19-REW-HAI |
| | ) | |
| v. | ) | |
| | ) | ORDER DENYING § 2255 MOTION |
| JOHN L. STANTON, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On March 10, 2026, Defendant/Petitioner John L. Stanton filed a § 2255 motion. *See* DE 427 (Motion). The motion relates to Stanton's 120-month term of imprisonment, with Judgment entered by this Court on April 18, 2023, for conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. *See* DE 338 (Judgment). In the petition, Stanton, a former physician, raises various ineffective assistance of counsel claims. *See* DE 427 at 12-21. The conviction centered on Stanton's role in a Tennessee medical practice that issued thousands of illegal Schedule II controlled substances over a lengthy period.

On referral, United States Magistrate Judge Edward B. Atkins recommended that the Court deny Stanton's motion as untimely under § 2255(f)'s one-year statute of limitations. *See* DE 440 (Recommended Disposition). The Recommended Disposition also counseled against the issuance of a certificate of appealability (COA). *See id.* at 10-11. Judge Atkins conducted a thorough analysis, assessing the full pertinent record and invoking the proper legal standards and apt case law. He informed Stanton of his right to object to the recommendation under 28 U.S.C. § 636(b)(1). *See id.* at 11. Stanton timely objected, *see* DE 441, and the Government responded in opposition, *see* DE 443.

For the following reasons, the Court **OVERRULES** Stanton's objections, **ADOPTS** Judge Atkins's Recommended Disposition, and **DENIES** Stanton's § 2255 motion as time-barred. No certificate of appealability will issue.

## I. Background

Stanton, previously a doctor licensed in Tennessee, conspired to distribute drugs through prescriptions written from a tainted medical practice. *See* DE 74 (Superseding Indictment). The relevant facts from Stanton's jury trial, as summarized by the Sixth Circuit, are as follows:

> In 2000, Dr. James Maccarone opened Gateway Medical Associates as a primary care medical practice in Clarksville, Tennessee. After a dozen years in operation, Gateway began to serve more patients seeking treatment for pain management. Over time, Dr. Maccarone came to realize that his clinic had gained a "reputation" as a "pill mill" where patients could "walk in, . . . pay whatever it is that it costs, and . . . walk out with narcotics." R.307 at 190. Patients drove as long as five hours each way to reach the clinic, drove by several other pain management clinics along the way, then waited in the parking lot past midnight to be seen, all while claiming (in many cases) to suffer from back pain. Drug dealers "sponsored" many of these patients so they could obtain prescription narcotics. R.306 at 270.
>
> "[D]rowning in debt" and recognizing that he could charge more than twice as much for a pain visit as he did for primary care, Dr. Maccarone leaned into the clinic's growing reputation as a "pill mill." R.307 at 218. Disregarding medical standards, Dr. Maccarone prescribed opioids even after patients failed drug tests, and on the rare occasions when he discharged patients for testing positive, he would allow them back into the practice if they paid an extra fee.
>
> In July 2016, Tennessee began requiring pain management clinics to employ medical directors. *See* Tenn. Code § 63-1-306(a). Dr. Maccarone lacked the credentials to qualify for this position. But he knew Dr. Stanton. Stanton practiced orthopedic surgery at the facility next door and had received certification in pain management. Dr. Stanton already served as the medical director for another clinic, and he agreed to serve this role at Gateway as well in return for a salary of $1,500 per week.
>
> As Gateway's medical director, Dr. Stanton oversaw its pain management services and safeguards, including state mandated policies for urine screening and pill counts. Dr. Stanton eventually warned Dr. Maccarone that Gateway's unusual hours, long-distance patient population, and high levels of medication raised "red flags." R.307 at 226, 228. But Dr. Maccarone ignored Dr. Stanton's recommendations to taper off high narcotics doses, and Dr. Stanton continued to sign off on state compliance reports despite his concerns.

> When Dr. Maccarone took an emergency medical leave of absence in November 2018, Dr. Stanton assumed responsibility for his patients. Dr. Stanton would see as many as three dozen patients in a single afternoon. He maintained Dr. Maccarone's practice of prescribing narcotics to patients who failed drug screens. But he did reduce these prescriptions by a standard amount of five or ten pills when patients refused his advice to try injections or physical therapy as alternatives. After Dr. Maccarone returned to the practice, Dr. Stanton continued to see his patients. Between November 2018 and October 2020, Dr. Stanton wrote roughly 5,800 narcotics prescriptions, and Dr. Maccarone wrote about 9,000 prescriptions.
>
> Gateway's prescription practices, together with large numbers of patients "tailgating" in the parking lot for hours, led state and federal investigators to scrutinize the clinic. R.305 at 103. After conducting a warrant-authorized search of Gateway, the government indicted Dr. Stanton, Dr. Maccarone, and two patient sponsors, Jeffrey Ghent and Terry Prince, for conspiring to distribute controlled substances without a legitimate medical purpose. Dr. Maccarone and the sponsors pleaded guilty. Dr. Stanton went to trial.
>
> Over the course of seven days, the jury heard from nineteen government witnesses, including Dr. Maccarone, the sponsors, and several clinic patients, as well as from Dr. Stanton and two other defense witnesses. The government also planned to offer expert testimony that Dr. Stanton's prescription practices lacked a legitimate medical basis. On the second day of trial, it asked the court to substitute a new expert witness, Dr. Timothy King, after it had second thoughts about its existing expert. The trial court held that this late disclosure would prejudice Dr. Stanton. But the court did allow Dr. King to testify as a rebuttal witness solely in response to Dr. Stanton's own testimony.
>
> The jury found Dr. Stanton guilty of the drug conspiracy charge. At sentencing, the court concluded that the files for 21 patients introduced at trial showed Dr. Stanton had prescribed a converted drug weight of at least 21,524 kilograms. On that basis, the Sentencing Guidelines recommended a minimum sentence of 188 months. The trial court varied downward to 120 months.

*United States v. Stanton*, 103 F.4th 1204, 1210 (6th Cir. 2024), *cert. denied sub nom. Stanton v. United States*, 145 S. Ct. 1058 (2025), *reh'g denied,* 145 S. Ct. 1348 (2025).

After losing on appeal, Stanton proceeded to file a § 2255 motion. *See* DE 427. In the petition, Stanton raises various ineffective assistance of counsel claims. *See* DE 427 at 12-21. On referral, Judge Atkins recommended that the Court deny Stanton's motion as untimely under § 2255(f)'s one-year statute of limitations. *See* DE 440 (following briefing at DE 433 and 437). The Recommended Disposition counseled against the issuance of a certificate of appealability (COA).

*See id.* at 10-11. Stanton timely objected as to timeliness, *see* DE 441, and the Government responded in opposition, *see* DE 443. The matter is ripe for judgment.

## II. Standard of Review

In evaluating a magistrate judge's recommendation, the Court must review *de novo* the "portions of the report or specified proposed findings" to which any party objects. 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* However, the Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985); *see also United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981) (holding that a failure to file objections to a magistrate judge's recommendation waives the right to appellate review); *see also Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (quoting *Kensu v. Haigh*, 87 F.3d 172, 176 (6th Cir. 1996)) (alterations adopted) (noting that the Sixth Circuit has "long held that, when a defendant does 'not raise an argument in his objections to the magistrate judge's report and recommendation he has forfeited his right to raise this issue on appeal'"); *United States v. Olano*, 113 S. Ct. 1770, 1777 (1993) (distinguishing waiver and forfeiture); Fed. R. Crim. P. 59(b)(2)–(3) (limiting de novo review duty to "any objection" filed); 28 U.S.C. § 636(b)(1) (limiting de novo review duty to "those portions" of the recommendation "to which objection is made"); Fed. R. Civ. P. 72(b). The review mechanics and process inform the Court assessment here.

## III. Analysis

Stanton specifically objects to Judge Atkins's findings that the § 2255 motion is untimely under 28 U.S.C. § 2255(f)(1) and (f)(4). *See* DE 441. A one-year limitations period applies for such motions. The one-year limitations period runs from the latest of four specified events, two

of which are relevant here:

> (1) the date on which the judgment of conviction becomes final;
>
> . . .
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1), (4).

The trial concluded with a jury verdict on August 31, 2022 (DE 245), and the Court entered judgment on April 18, 2023. *See* DE 338. Stanton timely appealed his conviction to the Sixth Circuit, *see* DE 340, and the Sixth Circuit later affirmed, *see* DE 388. On November 6, 2024, Stanton petitioned for a writ of certiorari before the United States Supreme Court. *See* DE 400. On January 13, 2025, the Supreme Court denied Stanton's petition for a writ of certiorari. *See* DE 401. Judge Atkins correctly analyzed Stanton's compliance with the limitations period using the date of Stanton's certiorari denial as "the date on which the judgment of conviction becomes final" for purposes of §2255(f)(1). *See* DE 440 at 3-5. Judge Atkins properly explained that "[f]inality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *See id*. at 4 (quoting *Clay v. United States*, 123 S. Ct. 1072, 1076 (2003)). Stanton counters that *Clay* does not control the timeliness question, because "[t]he court in *Clay* acknowledged that it was addressing a 'narrow . . . question' that involved how to calculate timing, for purposes of § 2255(f)(1), when a defendant does *not* seek certiorari after an unsuccessful direct appeal." *See* DE 441 at 3 (quoting *Clay*, 123 S. Ct. at 1074). Instead, Stanton argues that his judgment of conviction did not become final until the Supreme Court denied his ensuing petition for rehearing of the denial of certiorari on March 10, 2025. *See* DE 441 at 3. This was a mistake in analysis that is fatal to the (f)(1) theory.

Stanton's arguments fail. Though the Sixth Circuit has not yet explicitly addressed the issue in a published opinion, all other applicable circuits have held that the date of finality for a judgment of conviction, for §2255 purposes, is the denial of certiorari and not a later rehearing denial. *See United States v. Aguirre–Ganceda,* 592 F.3d 1043, 1045 (9th Cir. 2010); *Drury v. United States,* 507 F.3d 1295, 1297 (11th Cir. 2007); *In re Smith,* 436 F.3d 9, 10 (1st Cir. 2006); *Robinson v. United States,* 416 F.3d 645, 650 (7th Cir. 2005); *Campa–Fabela v. United States,* 339 F.3d 993, 993 (8th Cir. 2003); *Giesberg v. Cockrell,* 288 F.3d 268, 270–71 (5th Cir. 2002); *United States v. Segers,* 271 F.3d 181, 184–86 (4th Cir. 2001); *United States v. Willis,* 202 F.3d 1279, 1280–81 (10th Cir. 2000). The Sixth Circuit similarly endorsed this position in a COA denial opinion. *See Pina v. United States*, No. 20-4267, 2021 WL 2283872, at *1 (6th Cir. May 14, 2021) ("Pina's conviction became final when the Supreme Court denied certiorari on March 4, 2019, rather than on the date the Court denied rehearing."). As the Government correctly notes, the Supreme Court's rules support this interpretation. *See* DE 443 at 5. Supreme Court Rule 16.3 states that an order denying a petition for a writ of certiorari "will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice." This indicates that the order of petition denial remains in place and fully effective unless the Court or a Justice intervenes, suspending the order's finality.

The undersigned has long held this view. *See United States v. Evans*, No. 11-CR-43-JMH-REW, 2015 WL 3729332, at *5 (E.D. Ky. June 15, 2015) (Magistrate Judge decision adopted by Judge Hood):

> The authority is harmonious. Premised on the Supreme Court's own rules and its (and the circuits') binding interpretations of finality, certiorari denial is the triggering event. Although the Supreme Court or a Justice could alter that effect in a given case, relative to a hearing motion, absent such an act, the order of denial is immediately operative under Rule 16(3).

> The clarity of the analysis and strength of the authority emerges in the First Circuit's treatment in *In re Smith.* That Circuit, joining "every circuit" that has addressed the issue, withheld tolling effect from a cert. denial rehearing petition. The Court, citing a litany of authority, relied on the primacy of the certiorari denial date; a rehearing petition does not impact (or suspend the effectiveness of) that order's validity absent Supreme Court or Justice intervention. *See In re Smith,* 436 F.3d at 10 ("We agree and adopt the rule."). The Court characterized the issue as plain; "[T]he above reasoning and result are not reasonably debatable[.]" *Id.* The same analysis dooms Evans's § 2255 motion.
>
> Despite a lack of controlling Sixth Circuit authority, the Court is persuaded by the sound reasoning of the other circuits . . . addressing the issue. A petition for rehearing or certiorari denial does not delay commencement of the statute of limitations.

*See id.* Tellingly, Stanton does not address *Pina* and waives away the uncontradicted chorus of circuit law as of "minimal persuasive value." *See* DE 437 at 6. Not so. Given the clarity of the Supreme Court rule, the wall of law indicating the proper finality analysis, the Sixth Circuit's like signals, and this Court's long-held views, the Court wholly agrees with Judge Atkins in finding that the motion is tardy under (f)(1).[1]

Judge Atkins next considered whether Stanton's motion was timely under § 2255(f)(4). *See id*. at 5-9. Pertinent to the § 2255(f)(4) recommendation and analysis, Stanton specifically objects only to Judge Atkins's finding as to trial counsel's alleged failure to investigate and/or call certain fact witnesses to testify at trial. *See* DE 441 at 3-5. Stanton thus forfeits any arguments involving § 2255(f)(4) discovery re: other arguments (such as concerning trial decisions on expert witnesses, jury instructions, etc., which plainly ripened at the time of trial). *See Berkshire*, 928 F.3d at 530 (quoting *Kensu*, 87 F.3d at 176) (alterations adopted) (noting that the Sixth Circuit has "long held that, when a defendant does 'not raise an argument in his objections to the magistrate

---

[1] Regarding Stanton's reliance on *Griffith v. Kentucky*, 107 S. Ct. 708 n.6 (1987), a retroactivity case, the Court is not convinced. *Griffith* does not involve § 2255(f), and the adverb "finally" simply describes the pertinent "final" status. **When** a cert. denial is final is not, in any manner, addressed by *Griffith*.

judge's report and recommendation he has forfeited his right to raise this issue on appeal'"). The Court hones its analysis based on what is preserved.

Under § 2255(f)(4), the limitation for filing a motion to vacate runs from the date "on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence." The movant "bears the burden of proving that he exercised due diligence . . . . [T]he key question is whether, taking into account the reality of the prison system, [movant] could have discovered the factual predicate for his claims using due diligence more than a year before filing [the § 2255 motion.]" *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013) (citations and quotation marks omitted); *see also DiCenzi v. Rose*, 452 F.3d 537, 544 (6th Cir. 2013) (noting that under 2255(f)(4), "[t]he proper task . . . is to determine when a duly diligent person in petitioner's circumstances would have discovered [the underlying facts for his ineffective assistance claim]." (citations omitted)).

Stanton points to five witnesses—two former staffers and three former patients—he claims would have offered helpful testimony and should have been called by trial counsel. *See* DE 427 at 12-16. He criticizes attorney Strianse for either failing to contact and investigate the witnesses or for failing to call them. *See id*. Stanton tendered affidavits from the witnesses. *See* DE 427-1 (Marisol Zuniga Affidavit); DE 427-2 (Jeneline Heidtman Affidavit); DE 427-3 (Belvia Wagers Affidavit); DE 427-4 (Sandra Wagers Affidavit); DE 427-5 (Cecil Wagers Affidavit). The affidavits resulted from the legwork of investigator Marc Caudel, a contractor associated with Stanton's long-time lawyer Ron Chapman. *See* DE 437-1 (Caudel Declaration) at 2. Attorney Chapman represented Stanton as far back as prior to sentencing in 2023, but the affidavits did not come into being until 2026. *See id*.

In objecting to Judge Atkins's recommendation, Stanton alleges, "the relevant question is not whether Dr. Stanton was merely aware that these witnesses existed; the relevant question is whether—and when—Dr. Stanton became aware of what these witnesses have said that forms the basis for his 'claim or claims presented[.]'" *See* DE 441 at 4-5 (*quoting* § 2255(f)(4)). Stanton, in turn, does not dispute his awareness of the *existence* of the witnesses. To the extent that he claims that the witnesses "either recanted their previous statements or added new statements that were helpful and material to Dr. Stanton's defense[]" when interviewed by his investigator Marc Caudel, *see id*. at 5, Stanton offers no reasonable basis as to why that information could not have been discovered, with diligence, well more than a year prior to filing. Stanton relies instead on Investigator Caudel's declaration, where Caudel explains that it was difficult and time consuming to interview the witnesses given his involvement in a separate ongoing trial and Stanton's placement in federal custody. *See* DE 437-1 at 2. Essentially, Caudel reports that he did not begin any investigation until August of 2025, did not even meet with the incarcerated Stanton until January of 2026, and did not interview witnesses until a trip to Kentucky in February of 2026. *See* DE 437-1 at 2.

Importantly, as Judge Atkins notes, the witnesses in question (and their ken) were readily discoverable throughout the entirety of the trial and appellate period. *See* DE 440 at 8 ("As GMA's medical director, Stanton likely knew, or could have known with reasonable due diligence, the existence of the witnesses and the relevance of their prospective testimony."). Indeed, the Government demonstrates that employee Zuniga's statements were in the discovery, as were all patient identities. *See* DE 433 at 13-18; 433-1. Employee Heidtman, whom Stanton would surely have known, reported Stanton as being at the clinic only "six to eight months," *see* DE 427-2 ¶ 5, a small fraction of the field of the case. As to the patients, whatever they may say to laud Stanton,

the Government notes fifty failed urine tests across those three patients, which surely would cloud the efficacy of their proof. *See* DE 433 at 17-18. In any event, Stanton fully knew the patient population and had access to all patient files. They and their information was accessible to Stanton all the way back to the pretrial period.

And where is the diligence? The Court finds none on the relevant inquiry. Importantly, Stanton has not been a pro se litigant, limited and beset by his carceral circumstances. Rather, Attorney Chapman has been continuously advocating for Stanton since the period between the verdict and sentence. Thus, he entered his appearance before sentencing. *See* DE 280 (Motion for Leave for Ronald W. Chapman II to Appear for Pro Hac Vice) (dated October 25, 2022). Since then, Chapman seemingly has pulled every lever and pushed every button in an effort to advance Stanton's causes. Thus, via Chapman, Stanton appealed, *see* DE 340 (Notice of Appeal); Stanton pursued release during appeal, *see* DE 345 (Motion for Bond Pending Appeal); Stanton sought rehearing en banc on the affirmance; Stanton sought certiorari and, as noted, rehearing on the cert. denial; Stanton then sought compassionate release, *see* DE 403 (Motion for Compassionate Release), and then reconsideration of the compassionate release denial, *see* DE 417 (Motion for Reconsideration). What Stanton did not do, through Chapman or otherwise, is explore the factual basis for his witness-based § 2255 claims until after all of these other failed steps. That is not the exercise of due diligence.

Consider the Caudel tasking. Chapman did not assign him the job of looking for or assessing witnesses until August of **2025**. *See* DE 437-1 at 2. That is three years post-verdict and over two years post-judgment. *See* DE 245 (Jury Verdict); DE 246 (Jury Verdict as to Forfeiture); DE 338 (Judgment). Caudel did not interview Stanton (who had the knowledge of persons he worked with and patients he treated) until January of 2026, and he conducted no witness interviews

until February of 2026. *See* DE 437-1 at 2. Importantly, Stanton sat through (and was an active participant in) the entire criminal process and trial. He, the GMA Medical Director for the full tenure, well knew GMA personnel and patients, knew who had and had not been called as a witness, and knew the precise trial result. Further, the full trial transcript existed as of December 2022 (DE 316, e.g.,). If Stanton had access to the names and patient records (and, of course, his own putative knowledge), then any diligent pursuit of untapped or useful testimony merely required interviews. Strianse avers that, pretrial, he spoke to everyone Stanton suggested, and Stanton does not contradict that representation. *See* DE 433-2 at 3. The point here, though, is that Stanton knew who Strianse called, and he easily and without impediment (through an interview with any possible witness) could have cross-checked Strianse both as to the fact of interview and as to the content of what a witness would have offered. Stanton and his team elected to follow many paths and seek many remedies. They did not pursue any basis for potential claims reliant on un-called fact witnesses with any, much less due, diligence.

Stanton long has claimed innocence and been stubbornly resistant to accepting responsibility in this desultory case. Yet, he took no steps to construct a counternarrative to the jury's decision, featuring the witnesses now touted, until years after the verdict. The chronology suggests he put criticism of Strianse on the back burner, to await the result of all other avenues of possible relief. Only when those all failed did Stanton and Chapman retain an investigator, and that investigator did not even interview Stanton himself until January 19, 2026. Incredibly, that date is over a year from when the judgment at issue became fully final. Electing to eschew any inquiry from the point of the verdict, through sentencing, through appeal, and through every interim step all the way up to finality is not, on this record, due diligence. The information was,

at all times post-verdict, fully available to Stanton and his team through the exercise of due diligence. The Court finds the effort insufficient. His claims are stale under the (f)(4) rubric.

Plainly stated, Caudel's allegations of time constraints are not enough. Indeed, "§ 2255(f)(4) provides for a starting date of the statute of limitations when the facts supporting a claim could have been discovered after a diligent search, not when documents supporting those facts are actually obtained." *Solano v. United States*, No. 16-3558, 2017 WL 11776157, at *3 (6th Cir. Mar. 16, 2017). Accordingly, as Judge Atkins appropriately determined, Stanton fails to satisfy his burden under § 2255(f)(4). Again, his motion is time barred.

## IV. Conclusion

Judge Atkins appropriately found that Stanton's § 2255 motion, submitted on March 10, 2026, was plainly untimely given the prescribed limitations periods, subjecting it to dismissal. *See* DE 440. No other specific objections to Judge Atkins's recommendation are before the Court. The Court has separately considered the Recommended Disposition, the relevant authority, and the entire record. The Court agrees with Judge Atkins's careful analysis and conclusion that Stanton's petition is, as to all topics and claims, time barred. Accordingly, the Court **ORDERS** as follows:

1. The Court **ADOPTS** DE 440, **OVERRULES** DE 441, and **DENIES** DE 427; and
2. The Court further **DENIES** issuance of a COA. A COA may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). However, "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). Reasonable jurists would not find the Court's determination debatable, as a matter of procedure, and no COA should issue.[2] This, too, is a conclusion that Judge Atkins recommended and to which Stanton, on notice, did not demur.

This the 23rd day of October, 2026.

**Signed By:**
***Robert E. Wier*** REW
**United States District Judge**

[2] To cite again *United States v. Evans*, No. 11-CR-43-JMH-REW, 2015 WL 3729332, at *5, the undersigned found the timeliness analysis vis a vis (f)(1) not "reasonably debatable" in reliance on *In re Smith.*